ALLEN EDWARD GRIPPO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grippo v. Commissioner
Docket No. 21142-91
United States Tax Court
T.C. Memo 1993-101; 1993 Tax Ct. Memo LEXIS 102; 65 T.C.M. (CCH) 2135; March 24, 1993, Filed *102 Decision will be entered under Rule 155. Allen Edward Grippo, pro se. For respondent: Frank D. Armstrong, Jr.
PARR
PARR
MEMORANDUM OPINION PARR, Judge: Respondent determined petitioner is liable for the following deficiency and additions to tax for taxable year 1985: Additions to Tax
Deficiency
Sec. 6651(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6654(a)
$ 25,392
$ 6,348
$ 1,269.60
*
$ 1,450
The issues for decision are whether petitioner failed to report gain from the sale of stock in 1985, and whether petitioner is liable for the additions to tax for failure to pay estimated tax, for negligence, and for failure to file an income tax return. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Petitioner bears the burden of proving respondent's determination is in error. Rule 142(a); . *103 Some of the facts recited below were stipulated by the parties. The stipulation is incorporated herein by reference. Petitioner resided in Raleigh, North Carolina, when he filed his petition with this Court. Petitioner has not filed a Federal income tax return for the taxable year 1985. According to third party payor reports petitioner received $ 70,889 in 1985 from dividends and stock sales. During 1985 petitioner and his former wife, Helen, maintained a stock margin account, Account No. 102-18863 (joint account) with Discount Brokerage Corporation, also known as DBC Clearing Corp. (now Fleet Brokerage Securities). This account was closed on August 25, 1985, when petitioner and his wife separated. On August 28, 1985, petitioner opened a second account with DBC Clearing Corp. in his own name, Account No. 103-00130 and transferred to this account his share of certain stocks originally held in the previous joint account. During 1985 petitioner and Helen sold stock out of Account No. 102-18863 as follows: Sales
Total Cost
Proceeds
Name of
No.
Date of
including
Date of
Less
Company
Shares
Purchase
Commissions
Sale
Commissions
Gain
Saxon Industries,
Inc.
500
-   -   6/26/85
$ 626.00
-   Western Digital
Corp.
500
5/23/84
$ 4,661.00
7/25/85
6,748.00
$ 2,087.00
Manufactured
Homes, Inc.
2500
5/15/84
6,812.00
7/19/85
32,376.00
25,564.00
*104 During 1985 petitioner sold stock out of Account No. 103-00130 as follows: Sales
Total Cost
Proceeds
Name of
No.
Date of
including
Date of
Less
Gain or
Company
Shares
Purchase
Commissions
Sale
Commissions
(Loss)
Atlas Computer
Systems
500
8/23/84
$ 5,037.39
9/16/85
$ 4,945.00
($ 92.39)
Archer-Daniel-
Midland Co.
157
6/25/84
2,727.95
9/16/85
3,113.00
385.05 Floating Point
Systems, Inc.
300
5/25/84
4,756.23
9/16/85
9,790.00
5,033.77 Food Lion-A
500
5/18/84
4,472.69
9/16/85
8,369.00
3,896.31 $ 16,994.26
$ 26,217.00
$ 9,222.74 During 1985 petitioner and Helen incurred deductible interest on the joint account in the amount of $ 10,006.56. In the same year, petitioner also incurred deductible interest on his sole account of $ 1,832.57. Petitioner and Helen received dividend income of $ 860 from DBC Clearing Corp. on stock held in the joint account. In the same year, petitioner received dividend income of $ 271.47 from DBC Clearing Corp. on stock held in his sole account. Petitioner had an Individual Retirement Account (IRA) where funds were invested in shares of Gateway Option Income Fund, Inc. *105 (Gateway), a mutual fund. The IRA account was administered by the First National Bank of Cincinnati (now called Star Bank). During 1985 petitioner liquidated the Gateway shares and withdrew the proceeds. The parties have stipulated that the proceeds were $ 2,902. Petitioner also received taxable dividends from the following sources and amounts: Source
Amount
Shearson Lehman Brothers, Inc.
$ 135
Gateway Option Income Fund, Inc.
100
U.S. Gold Shares Fund
15
Petitioner received interest income of $ 202 from Southern National Bank. Petitioner contends that his losses in stock exceeded his gains and that he therefore has no tax liability. However, he had destroyed all of his records when he moved, which was a month before he received the notice of deficiency. Therefore, he had to rely solely on the records obtained by respondent from the DBC Clearing Corp. Respondent orally conceded that petitioner had a loss of $ 1,887.97 from Shearson Commodity Options. This consisted of four purchases of puts and calls, three of which expired at a loss and one was sold at a loss. Petitioner also claims a loss for two stocks he alleges became worthless in 1985. Petitioner and *106 his wife owned 2,000 shares of Bell National before they separated; petitioner owned 1,000 at the end of 1985, having divided them with his wife. On December 31, 1985, the shares are shown at $ .25 per share, or a market value of $ 250. Petitioner did not sell them at the end of the year. Thus, although the value had fallen dramatically from $ 6.50 per share on January 31, 1985, or a total of $ 6,500 for 1,000 shares, this stock was not "worthless" at the end of the year, when petitioner still owned it. Petitioner also claims that his 500 shares in Billings Corp., priced at $ 3.625 per share on January 31, 1985, were worthless at the end of the year. The DBC statement for the period ending December 31, 1985, shows the stock to be "unpriced" and the entry in the column headed "market value" is left blank. While this evidence could be taken to mean merely that DBC was uncertain what value, if any, to assign to the stock, we think it more likely that under the circumstances petitioner's interpretation is correct. We therefore agree with petitioner that the Billings stock had become worthless. Unfortunately, petitioner has no records to establish his basis in Billings and the *107 records provided by DBC do not reveal what petitioner paid for the stock. Petitioner testified that he recalled paying something over $ 5 per share in 1984. We believe petitioner purchased this stock and that he paid something for it. Using our best judgment and weighing against petitioner, whose inexactitude is of his own making, we hold that petitioner's basis in the Billings stock was $ 3.625, or a total of $ 1,813. See . Petitioner also claimed he purchased computer equipment for $ 2,000, but he had no records to substantiate the amount paid nor his business purpose. We therefore must disallow his claim. With regard to the sale of 500 shares of Saxon Industries, Inc., petitioner was unable to establish the date of purchase or his cost. He testified that he purchased Saxon about 10 years ago and transferred the stock to DBC from another broker. Although he believed the purchase price was "in the 5s", we find that his memory of the purchase price 10 years ago is not reliable. Saxon is shown on the DBC statement ending January 31, 1985, at $ .75. It is obvious petitioner paid some value *108 for it. Accordingly, we will allow him $ .75 basis per share, or a total of $ 375. Therefore, petitioner sustained a gain of $ 251 on Saxon. The parties orally stipulated that petitioner received $ 438 from the sale of U.S. Gold Share Fund shares. However, petitioner testified he paid $ 500 for the shares and therefore suffered a loss of $ 62. We find his testimony credible and will accordingly allow the loss. Petitioner had a duty to file an income tax return and failed to so. Sec. 61(a). His only excuse is that he believed he had more losses than gains. This excuse is simply not sufficient. We therefore find petitioner is liable for the negligence addition to tax under section 6653(a). Since he did not file and did not pay estimated tax, he is also liable for those additions under sections 6651(a) and 6654(a), respectively. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on $ 25,392.↩